**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ROGER DALE MEDLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-4488** |
| **JAMES LEBLANC** | **SECTION: "B"(3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Roger Dale Medley, is a state prisoner incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He was charged by an indictment alleging that he committed the aggravated rape of his three-year-old son. However, an August 7, 2014, a jury found him guilty of the lesser offense of indecent behavior with a juvenile under Louisiana law.[1] On August 15, 2014, he was sentenced on that conviction to a term of twenty years imprisonment

---

[1] State Rec., Vol. 3 of 5, trial transcript, p. 643; State Rec., Vol. 1 of 5, minute entry dated August 7, 2014; State Rec., Vol. 1 of 5, jury verdict form.

without benefit of probation, parole, or suspension of sentence.[2]  On September 18, 2015, the

Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana

Supreme Court then denied his related writ application on November 18, 2016.[4]

On or about May 9, 2017, petitioner filed an application for post-conviction relief with the

state district court.[5]  That application was denied on September 11, 2017.[6]

On or about October 30, 2017, petitioner filed the instant federal habeas corpus

application.[7]  The state concedes that the application is timely but argues that petitioner's claim

has no merit.[8]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions

of law, and mixed questions of both.  The amendments modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S.

685, 693 (2002).

---

[2] State Rec., Vol. 3 of 5, transcript of August 15, 2014; State Rec., Vol. 1 of 5, minute entry dated August 15, 2014.
[3] State v. Medley, No. 2005 KA 0100, 2015 WL 5515980 (La. App. 1st Cir. Sept. 18, 2015); State Rec., Vol. 4 of 5.
[4] State v. Medley, 210 So. 3d 282 (La. 2016); State Rec., Vol. 4 of 5.
[5] State Rec., Vol. 5 of 5.
[6] State Rec., Vol. 5 of 5, Reasons for Denying Application for Post-Conviction Relief dated September 11, 2017.
[7] Rec. Doc. 7.
[8] Rec. Doc. 15.  In its response, the state argues both that petitioner's claim is unexhausted and that it fails on the merits.  It is clear that a federal court has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.");  Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998).  Because petitioner's claim does in fact fail on the merits, the undersigned recommends that relief simply be denied on that basis and that a ruling on the exhaustion defense be pretermitted.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

3

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (emphasis added; citations omitted); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## II.  Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of the

case as follows:

> On or around November 20, 2011, three-year-old A.M.[FN 3] told his mother, K.O., that his father, defendant, had sexually assaulted him. A.M. described that defendant choked him with his "woodie," a term that A.M. used to mean "penis." A.M. stated that defendant had promised to buy him a toy in exchange for performing this act.

[FN 3]  In accordance with LSA-R.S. 46:1844(W), the victim herein is referenced only by his initials or as "the victim."  With the exception of defendant, who is the victim's father, the victim's family members are also referenced only by their initials.

An investigation spanning approximately one year ensued following this allegation.  It included representatives from the Slidell Police Department, the Department of Children and Family Services, a licensed clinical social worker, and the St. Tammany Parish Children's Advocacy Center ("CAC").  In a December 2012 recorded forensic interview with CAC forensic interviewer Jo Beth Rickels, A.M. reiterated the story about defendant forcing oral sex upon him in exchange for a toy.  A.M. indicated that the incident occurred in the shower.  Later the same month, defendant was arrested and charged with the aggravated rape of A.M.[9]

### III.  Petitioner's Claim

Petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

[D]efendant contends that the evidence presented at trial was insufficient to support the jury's verdict finding him guilty of indecent behavior with a juvenile. He argues that the evidence presented at trial demonstrated that K.O. was not a credible witness and that the police failed to adequately investigate the allegations against him.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 660. The Jackson standard of review, incorporated in LSA-C.Cr.P. art. 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 01-2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

Louisiana Revised Statute 14:42 provides in pertinent part:

A. Aggravated rape is a rape committed ... where the ... oral ... sexual intercourse is deemed to be without lawful consent of the victim

---

[9] State v. Medley, No. 2005 KA 0100, 2015 WL 5515980, at *1 (La. App. 1st Cir. Sept. 18, 2015); State Rec., Vol. 4 of 5.

6

because it is committed under any one or more of the following circumstances:

* * *

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

Louisiana Revised Statute 14:41 provides in pertinent part:

A. Rape is the act of ... oral ... sexual intercourse with a male or female person committed without the person's lawful consent.

Louisiana Revised Statute 14:81 provides in pertinent part:

A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:

(1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen,[FN 4] where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

[FN 4] As to the elements of the responsive offense of indecent behavior with juveniles, the trial court instructed the jury regarding the enhanced version of this offense, which involves the commission of the offense against a victim under thirteen years of age. See LSA-R.S. 14:81(H)(2).

At trial, the jury had the opportunity to view two CAC interviews of A.M. In the first interview, recorded December 14, 2011, approximately three weeks after the alleged incident, A.M. engaged in conversation with Ms. Rickels and correctly identified certain body parts on an anatomical illustration she showed him. However, he was largely unresponsive to questions suggesting any inappropriate act by his father. Despite Ms. Rickels' best efforts to interview him, A.M. provided no pertinent information. After only a few minutes, A.M. took a stuffed animal from the interview room and left to find his mother.

In the second interview, recorded December 4, 2012, nearly one year later, A.M. provided Ms. Rickels with more pertinent information. Within a few seconds of entering the interview room, A.M. began to ask "what's that private stuff?" Ms. Rickels asked A.M. to explain what he meant, and he stated that one time, in the shower, his dad put "this in my mouth" (indicating to his own penis). A.M. also pointed to an anatomical illustration to indicate that defendant's penis had gone into his mouth. A.M. explained to Ms. Rickels that defendant had offered him a toy to complete that act, but he never did give him a toy and that his dad was a liar. A.M.

7

further stated that it "choked his mouth" when defendant's penis went into his mouth. Ms. Rickels asked A.M. whether anyone had told him to tell her this story. He stated that Ms. Lisa (Lisa Tadlock, a licensed clinical social worker who was A.M.'s therapist) had told him to tell her.

Slidell Police Department Detective Brian Brown testified that he was the lead investigator in this case. He began his investigation after being contacted by a Child Investigative Services case worker. Detective Brown testified that he never interviewed A.M. because he was not trained to interview juveniles in sexual abuse cases. He noted that K.O. was occasionally uncooperative throughout his investigation, even where he suspended the investigation at one point because he was suspicious that K.O. might be manipulating A.M.

Ms. Rickels testified regarding some of the circumstances of her interview with A.M. She described some red flags for the jury that might indicate a child is being manipulated or coached to give a particular statement. One red flag that Ms. Rickels described involves a situation where a child, without any prompting from her, blurts out an allegation. Ms. Rickels indicated that situations where children do not remain consistent in their story also raise red flags. On cross-examination, Ms. Rickels admitted that A.M. blurted out his allegation against defendant within only a few seconds of the beginning of the second interview. However, on redirect examination, she clarified that A.M.'s blurt might be explained by his awareness of the reason for his second interview with her – that is, because he had made allegations against defendant to two therapists.

K.O. testified that she and defendant were never married but were living together until they separated about three weeks before the date of the incident. According to K.O., on that date, defendant and A.M. were at defendant's sister's house, R.M., when defendant called her to say that A.M. was sick and needed medicine. K.O. drove to Walgreens for the medicine, and R.M. came to get her there because K.O.'s car ran out of gas. K.O. decided to spend the night at R.M.'s house and get gas in the morning. K.O. testified that as she and A.M. were lying down next to each other to go to sleep, A.M. told her that defendant had choked him with his "woodie," a word he used for his penis. K.O. stated that A.M. told her the same thing the following morning, adding that defendant had promised to buy him a toy. After K.O. asked defendant why A.M. would "say something like that," they both sat with the child, and K.O. said, "[A.M.], you need to tell Mommy what you said about Daddy." According to K.O., A.M. then pointed to defendant's private part and said, "Daddy choked me like this." K.O. stated that she reported the incident to the Slidell Police Department and that a daycare worker later reported it to Social Services.

Lisa Tadlock, A.M.'s therapist beginning in November 2012, approximately one year after the alleged incident, testified regarding her twenty-three therapy sessions with him over a period of approximately eighteen months. Initially, she was evaluating A.M. to determine if it was appropriate for him to have visitation with defendant. In one of their first sessions, A.M. told her that he had told another therapist that defendant put his penis in A.M.'s mouth. He also

informed her that defendant had promised him a toy if he allowed him to commit that act, but he was mad because defendant never delivered on that promise. In Ms. Tadlock's opinion, A.M. appeared to understand the difference between the truth and a lie, and he remained consistent in his story. She noted that it was difficult for young children to maintain a lie for a long period of time.

A.M. testified via closed-circuit television. He stated that he had watched the video of his second interview with Ms. Rickels and that the things he said on the video were true. A.M. also said that defendant lied about buying him a toy.

Defendant called two witnesses on his behalf. The first was Noel Ramos, a personnel director for Weeks Marine, defendant's former employer. Mr. Ramos told of an incident where a woman came into the employer's office with a letter for defendant. The letter was from an attorney and concerned possible representation for an injury that defendant may have suffered on the job. K.O., under earlier cross-examination, had admitted to going to defendant's place of employment with a letter, but she denied that it involved a lawsuit. Mr. Ramos admitted that the woman, who he could not identify, asked him to pass the letter on to defendant.

R.M., defendant's sister, testified that defendant and K.O. had a tumultuous relationship. She stated that K.O. used A.M. as a pawn to manipulate defendant. R.M. stated that, on the morning after K.O. spent the night, she drove K.O. to Walgreens to retrieve her car. She testified that K.O. told her what A.M. said defendant had done to him. According to R.M., K.O. related this information in a nonchalant manner, with a "half smirk." During the investigations following the incident, R.M. spoke with Detective Brown on the phone, but she said he never followed up with her. She also spoke briefly with someone from the Office of Child Services.

Defendant also testified at trial. He categorically denied committing the act of which he was accused. He described his on-again/off-again relationship with K.O. following A.M.'s birth. He testified to an incident where K.O. unlawfully entered a friend's house where he was staying while in town from work. He also described that K.O. would routinely manipulate him using A.M. When he heard A.M.'s accusatory statement the morning after K.O. spent the night, defendant admitted to getting defensive and questioning K.O. as to who she had been bringing around his son. Defendant described that he had spoken to the Office of Child Services investigator freely about the incident, but he spoke to Detective Brown only after his arrest.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See

9

State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir.1985).

The testimony in the instant case was clearly conflicting. While A.M. testified that his second CAC interview contained the truth about defendant's actions, defendant categorically denied that anything illicit took place. A.M.'s credibility was bolstered by the testimonies of K.O., Ms. Rickels, and Ms. Tadlock. However, K.O.'s credibility was impugned by Detective Brown, R.M., and defendant. In short, the jury made a credibility determination and ultimately decided against the version of events offered by defendant. The testimony of the victim was sufficient to establish the elements of this offense. See State v. Clouatre, 12-0407 (La.App. 1 Cir. 11/14/12), 110 So.3d 1094, 1100. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). We cannot say that the jury's determination was irrational under the facts and circumstances presented to it. Ordodi, 946 So.2d at 662. Thus, viewing the evidence in the light most favorable to the State, the evidence would indicate that defendant, who was thirty years old at the time of the offense, engaged in oral sexual intercourse with A.M., his three-year-old son. Therefore, the State proved facts sufficient to convict defendant of the aggravated rape of A.M.

In State *ex rel.* Elaire v. Blackburn, 424 So.2d 246, 251 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," i.e., a legislatively approved responsive verdict that does not fit the evidence, but that, for whatever reason, the jurors deem to be fair, as long as the evidence is sufficient to sustain a conviction for the charged offense. If the defendant timely objects to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict, the court overrules the objection, and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. However, if the defendant does not enter an objection, at a time when the trial judge can correct the error, then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury. See State *ex rel.* Elaire, 424 So.2d at 251.

Here, defendant did not object to the instruction on the responsive verdict of indecent behavior with a juvenile. It is possible that the jury returned a "compromise" verdict of this responsive offense because of the complex credibility issues present in this case. Regardless of the jury's ultimate reasoning, the evidence presented at trial was sufficient to convict defendant of the charged offense, so it

was also sufficient to support defendant's conviction for the responsive offense of indecent behavior with a juvenile.  This assignment of error is without merit.[10]

The Louisiana Supreme Court then denied petitioner' related writ application without assigning additional reasons.[11]

Because a claim challenging the sufficiency of the evidence presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Davila v. Davis, 650 Fed. App'x 860, 866 (5th Cir. 2016).  For the following reasons, the Court finds that he has made no such showing.

As the Louisiana First Circuit Court of Appeal correctly noted, claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 567 U.S. 37, 43 (2012); see also Coleman v. Johnson, 566 U.S. 650, 651 (2012).

---

[10] State v. Medley, No. 2005 KA 0100, 2015 WL 5515980, at *1-5 (La. App. 1st Cir. Sept. 18, 2015); State Rec., Vol. 4 of 5.
[11] State v. Medley, 210 So. 3d 282 (La. 2016); State Rec., Vol. 4 of 5.

Here, as noted, petitioner was charged with the crime of aggravated rape but was convicted of the lesser offense of indecent behavior with a juvenile. Because he failed to object to that part of the jury charge concerning the responsiveness of a verdict of indecent behavior with a juvenile and makes no argument of prejudice now, his sufficiency claim is considered with regard to the elements of the charged offense, aggravated rape. See Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990).

The elements of a sex crime and a petitioner's guilt of such a crime can be established through the victim's testimony, and it is clear that the victim's testimony alone is generally sufficient evidence to support a conviction. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Johnson v. Cain, Civ. Action No. 16-927, 2017 WL 5176386, at *15 (E.D. La. Apr. 25, 2017), adopted, 2017 WL 5157604 (E.D. La. Nov. 7, 2017); Craddock v. Cain, Civ. Action No. 10-2044, 2014 WL 2083115, at *11 (E.D. La. May 19, 2014); Stogner v. Cain, Civ. Action No. 12-2703, 2013 WL 2444667, at *11 (E.D. La. June 4, 2013). Here, the elements of the crime were clearly established through A.M.'s testimony. Petitioner's sole argument in support of his claim is that A.M.'s testimony, as bolstered by Rickles' expert testimony, was not credible.

It is true that, based on the evidence of presented at trial, the jurors *could have* concluded that A.M. was manipulated into making a false allegation. But they did not. On the contrary, they obviously found A.M. credible, and their credibility determination is not one to be second-guessed by this federal court on habeas review. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting

inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

Again: the question before this Court is not "whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original; citation and quotation marks omitted).  In other words, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (emphasis added) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).  Moreover:

> [A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos v. Smith, 565 U.S. 1, 2 (2011).

Mindful of these stringent standards of review, the Court finds that, when the evidence in the instant case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly,

13

under the doubly deferential standards of review which must be applied by this federal habeas court, petitioner's claim for relief should be denied.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Roger Dale Medley be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[12]

New Orleans, Louisiana, this thirty-first day of July, 2018.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[12] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.